IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA FORTIER and PAUL OLSON,
on behalf of O.O., a minor child,

    Plaintiffs,

v.                                     No. 1:16-CV-00482

THE NEW MEXICO HUMAN SERVICES
DEPARTMENT and THE NEW MEXICO
DEPARTMENT OF HEALTH; BRENT
EARNEST, Secretary, New Mexico Human
Services Department, in his official capacity;
LYNN GALLAGHER, Acting Cabinet Secretary;
New Mexico Department of Health, in her official
capacity; CATHY STEVENSON, Director,
Developmental Disabilities Supports Division of
the New Mexico Department of Health; in her
official capacity; NANCY SMITH-LESLIE,
Director, Medical Assistance Division of the New
Mexico Human Services Department, in her
official capacity,

    Defendants.

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants, the New Mexico Human Services Department and the New Mexico Department of Health and Brent Earnest, Lynn Gallagher, Cathy Stevenson and Nancy Smith-Leslie in their official capacities ("Defendants"), by and through their attorneys of record, Miller Stratvert P.A., respectfully file this Reply in support of their Motion to Dismiss filed on June 10, 2016 [Doc. 4] ("Motion") and the supporting Memorandum Brief filed therewith [Doc. 5] ("Memorandum Brief"). As discussed below, Plaintiffs attempt to obfuscate the issues by making unsustainable factual arguments that are irrelevant to the legal issues at hand. Defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 1-012(b)(6).

**I. Plaintiffs mischaracterize the New Mexico regulations as categorically denying eligibility for DD Waiver services to individuals with FAS as a class. Therefore, Plaintiffs' argument that New Mexico purposefully discriminates against individuals with FAS for purposes of the DD Waiver program is misleading and fatally flawed.**

Plaintiffs' efforts to defeat Defendants' Motion, while lengthy and frequently redundant, miss their mark. Plaintiffs continue to urge this Court to view the issue of O.O.'s diagnosis of fetal alcohol syndrome ("FAS") as a condition that is subject to "intentional exclusion" and purposeful "discrimination." Plaintiffs base their argument on a false premise. Nowhere in New Mexico's entire administrative and regulatory scheme is there any specific exclusion of individuals with FAS as a class of persons who are not eligible for Developmental Disability Waiver ("DD Waiver") services. A lack of inclusion is not the same thing as deliberate exclusion, especially where individuals with that very condition (FAS) may be eligible for DD Waiver services based on separate but related criteria, such as IQ.

For example, on page 7 of Plaintiffs' Response filed on July 1, 2016 [Doc. 13] ("Response"), Plaintiffs claim that "HSD and DOH denied [O.O.] a public accommodation (admission to the DD Waiver waitlist) based on her particular disability—FAS." Similarly, on page 8, Plaintiffs claim that "Defendants' Exclusion of FAS Violates the Medicaid Act." Plaintiffs apparently seek to characterize the lack of a specific *inclusion* of a syndrome as a deliberate *exclusion* in a misguided attempt to argue that there has been an effort to discriminate against this particular condition (FAS), when that is simply not the case. Even Plaintiffs admit that some individuals who have FAS will indeed qualify for the DD waiver. *See* Response at 13 (noting that "while some individuals with FAS diagnoses have IQ scores low enough to qualify [for the DD Waiver program] under 8.290.400.10(B)(1) NMAC, others do not".)

Plaintiffs also make the very puzzling statement of their Response that Defendants' assertion that an individual must have a qualifying condition before one looks at the individual's functional limitations is not supported by any authority, *see* Response at 13, when in fact the Defendants' interpretation is supported by the structure and language of the federal and state regulations themselves. Under the federal regulation, one does not look at the individual's functional limitations *unless* the individual has a qualifying condition. *See* 42 C.F.R. § 435.1010 (stating that "Persons with related conditions means individuals who have a severe, chronic disability that meets *all* of the following conditions" (emphasis added)); *id.* (defining the required conditions to include (a) a diagnostic component; (b) an age-of-onset component; (c) an expectation of indefinite continuation; and (d) an assessment of functional limitations). The New Mexico regulation, 8.290.400.10(B)(2) NMAC, is similarly structured, except that it specifically defines what related conditions will qualify and also includes a prong regarding similarity between the individual's condition and the condition of individuals with intellectual disabilities. *Compare* 42 C.F.R. § 435.1010, with 8.290.400.10(B)(2) NMAC; *see also Snelling v. S.D. Dept. of Soc. Serv.*, 780 N.W.2d 472 (S.D. 2010), discussed *infra*. On the other hand, Plaintiffs' statement that "the Court must examine O.O's actual functioning in order to determine whether Defendants have violated the law" (*see* Response at 5) is not supported by any authority, for the simple reason that there is none.

Plaintiffs also make the disingenuous argument that they need discovery on the issue of "cost savings" because that issue was raised by Defendants in their Motion (*see* Response at 17), but that is not the case. Defendants did not assert that FAS was not included as a recognized diagnosis for cost-saving purposes. Instead, Defendants rely on the general principle that the DD Waiver program was not intended to encompass every possible condition, nor could it ever

3

encompass every possible condition. Clearly, there is not a one-to-one correlation between individuals who qualify for Medicaid under intellectual disability standards and those that qualify for the DD Waiver. Otherwise, there would be no reason for re-qualifying a Medicaid-eligible individual under the related but separate DD Waiver standards.

Another obvious flaw in Plaintiffs' Response is that much of Plaintiffs' argument consists of policy considerations, which are issues that are the province of the legislative and executive branches in the context of the legislative and rule-making processes, respectively, and are not the province of the judiciary. Plaintiffs set forth arguments and data that were best considered by those individuals charged with drafting and adopting the statutes and rules, and are not appropriate in a judicial setting where the Court's job is to interpret the law, not to legislate.

Furthermore, depending on the outcome of this declaratory judgment proceeding, Plaintiffs' appeal of the agency decision may be moot. As shown below, the issues of statutory interpretation, which are at the heart of this cause of action, are ripe for determination as a matter of law because Plaintiffs' arguments are based solely on the language of the Medicaid Act and New Mexico statutes and related regulations. These issues are not dependent on discovery, despite Plaintiffs' misguided attempts to so argue.

Defendants filed a Motion to Dismiss to challenge the legal sufficiency of the Complaint. Defendants' Motion and Memorandum Brief did not present any matters outside the pleadings in this case, and Defendants' attachment of (a) a reference copy of 8.290.400 NMAC [Doc. 5-1] and (b) a copy of the Human Rights Bureau's letter of May 5, 2016 [Doc. 5-2, stating that the Bureau lacked jurisdiction over Plaintiffs' complaint] also did not present any matters outside the pleadings. Likewise, Plaintiffs did not present any matters outside the pleadings in this case, and Plaintiffs also did not make any request that Defendants' Motion be converted to a motion for

4

summary judgment. *See* Fed. R. Civ. P. 12(d). Finally, because the task before this Court is to interpret the law applicable to New Mexico's DD Waiver program, there is no reason to allow discovery as to any factual matters. The Court should proceed to evaluate and decide Defendants' Motion as a motion to dismiss.

II.    **Nothing in the Medicaid Act requires New Mexico to find that individuals with FAS are eligible for DD Waiver services.**

Plaintiffs argue that New Mexico's criteria for "related conditions" are impermissibly narrow, under-inclusive and arbitrary, according to Plaintiffs' construction of the language in the enabling federal statute. Upon reviewing page 9 of Plaintiffs' Response, however, one sees a further example of the type of policy-making considerations that Plaintiffs advocate throughout their brief instead of focusing on the statutory language itself. Clearly, had Congress and federal regulators intended that FAS be a covered condition, they could have done made it so. For example, the law provides eligibility for individuals whose condition is such that they would automatically be entitled to waiver, such as those with cerebral palsy and individuals whose IQ falls below the threshold. Plaintiffs admit that O.O.'s IQ is significantly above that threshold and therefore she does not qualify on the basis of her intellectual functioning alone.

Neither the Medicaid Act nor the New Mexico scheme states, as Plaintiffs argue (*see* Response at 11), that "[a]n individual must have a meaningful choice between services offered through an ICF/IID and the DD Waiver." Plaintiffs further argue that "[i]f the state employs different qualification definitions for these programs, the O.O. [sic] cannot choose and is effectively forced into institutional care." *See id.* However, as previously noted, there is not a one-to-one correlation between ICF/IID and the DD Waiver, because individuals who qualify for Medicaid services under ICF/IID do not automatically qualify for the DD Waiver. The federal statutory scheme requires that the state determine the criteria that will be used; it gives guidance

5

to the states, but allows states the individual discretion to define "related conditions." *See* 42 C.F.R. § 441.301(b)(3) (requiring that a waiver application "[d]escribe the group or groups of individuals to whom the services will be offered"). Had the federal scheme contemplated absolute uniformity throughout the nation in the provision of services to intellectually impaired individuals, it would not have granted broad deference to the states to define related conditions.

Plaintiffs' argument that focuses on an alleged "exclusion" of individuals with FAS simply ignores the panoply of individuals with a broad spectrum of conditions who have intellectual impairments and who are covered by the DD Waiver. Because the eligibility criteria for ICF/IID and the DD Waiver are not co-extensive, there will necessarily be individuals such as O.O. that qualify for one program but not the other—but such an outcome does not constitute any violation of applicable law.

**III. 42 U.S.C. § 1983 does not provide a private cause of action for individuals who are not eligible for the DD Waiver program.**

The cases that Plaintiffs rely on to argue that 42 U.S.C. § 1396n provides a private right of action under § 1983 present factually different circumstances from O.O.'s situation. Citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), Plaintiffs correctly note that courts are asked to consider three factors in evaluating the existence of a private right of action: (1) whether Congress intended for the provision to benefit the plaintiff; (2) whether the plaintiff demonstrated that the statutory right is not so "vague and amorphous" that enforcement strains judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the States such that "the provision giving rise to the asserted right . . . [is] couched in mandatory, rather than precatory terms." However, there is nothing in the Medicaid Act to suggest that New Mexico has violated a mandatory provision in defining "related conditions," which was

6

purposefully left to the individual states by the federal government. *See* 42 C.F.R. 441.301(b)(3).

In the cases Plaintiffs cite, including *Blessing* and *Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007), the individuals who were found to have a private right of action were already receiving services. Thus, the question was whether the services received were adequate, not the threshold question of whether the individuals were "qualified" to receive the services. Because these individuals were already receiving the benefits of the statute in question, the courts found that the statute was intended to benefit those plaintiffs.

O.O. cannot show she has similar standing to raise a § 1983 claim, as she cannot show that she falls under a regulatory or statutory provision that creates a mandatory obligation to her on the part of the State. Because there is no mandatory language regarding individuals such as O.O., her claim is "vague and amorphous." Likewise, the definition of "related condition" is provided in discretionary terms rather than mandatory terms. Plaintiffs therefore cannot assert a § 1983 claim. Instead, Plaintiffs' only recourse is to challenge the construction of New Mexico's implementation of its approved DD Waiver criteria.

A 2010 decision by the South Dakota Supreme Court supports Defendants' position that New Mexico's DD Waiver program implemented in accordance with federal law does not obligate New Mexico to provide DD Waiver services to individuals based on their FAS diagnosis, therefore such individuals like O.O. do not have a private right of action under § 1983. In *Snelling v. S.D. Dept. of Soc. Serv.*, 780 N.W.2d 472 (S.D. 2010), the party (Kyla Snelling) seeking review of an ALJ decision that she was ineligible for services under the Medicaid FS (family support) waiver program for mentally retarded individuals (ICF/MR) was a teenager suffering from Spinal Muscular Atrophy Type II, a degenerative muscular disease which results

7

in numerous substantial physical limitations but does not affect brain function. Thus, she had a normal IQ. Snelling argued that her substantial physical limitations presented as identical impairments of those with developmental disabilities and that, accordingly, she should be eligible for waiver services. *See id.* at 478. For the definition of "related conditions," the South Dakota waiver program under consideration relied on the same federal regulation (42 C.F.R. § 435.1010) on which New Mexico's DD Waiver program relies for that definition. Because Snelling's IQ exceeded 70 (the threshold for mental retardation or developmental deficiency), the South Dakota Department of Social Services ruled that she did not meet South Dakota's definition of persons with a "related condition" and, consequently, was not eligible for waiver services. *Snelling*, 780 N.W. 2d at 477.

The South Dakota Supreme Court upheld the district's court's affirmance of the agency's eligibility determination and rejected Snelling's arguments that a functional analysis was required. Discussing the same federal regulation defining the term "related conditions" (42 C.F.R. § 435.1010) and reviewing South Dakota's regulations derived from the Medicaid Act and its associated regulations, the Court found that the claimant lacked a diagnosis that was closely related to mental retardation, therefore the agency did not need to consider her functional limitations to determine her eligibility. *Id.* at 478. The *Snelling* Court also considered the holding in *Pacheco v. Rhode Island Department of Mental Health, Retardation & Hospitals*, 1996 WL 936911 (R.I. Super. Mar. 22, 1996) (unpublished), a case upon which Plaintiffs rely to argue in favor of a functional approach to determine closely related conditions. The *Snelling* Court, however, distinguished *Pacheco* on grounds that *Pacheco* interpreted a state law that was patterned on a different statute (the Developmental Disabilities Assistance Act, 42 U.S.C. §§6000-6081), rather than the Medicaid regulations pertinent to both *Snelling* and the instant

8

case. Consequently, *Snelling* held that the lower court did not err when it upheld the determination that Snelling was not qualified for services, as she failed to meet the first qualification of the "related conditions" definition in that she was not mentally retarded and did not have a condition closely related to mental retardation: "While Kyla's physical limitations are similar to those of some individuals with qualifying medical conditions, Kyla's cognitive abilities and IQ place her beyond the population for which the Medicaid FS waiver program was intended . . . . " *Id.* at 480. Because O.O. (like Kyla Snelling) does not qualify for the Medicaid-authorized DD Waiver program from which she seeks services, the Medicaid statutes do not provide O.O. with any private right of action.

Plaintiffs' reliance on *Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015), is likewise misplaced. That case did not involve a DD Waiver, but rather the Nursing Home Reform Act, 42 U.S.C. § 1396r, and the Pre-Admission Screening and Resident Review process at 42 U.S.C. § 1396r(e)(7)(A), and their application to a potential class of nursing home residents. The *Dunakin* court held that Washington State's conditions for eligibility could not stand because they differed in multiple ways from the qualifications existing under federal law, including an inconsistency in the required age of onset. Likewise, Plaintiffs' invocation of *Pacheco, supra,* is distinguishable as discussed by the *Snelling* court, because *Pacheco* construed a different federal statute and a non-waiver program instituted by the State of Rhode Island. These cases do not support Plaintiffs' positions that 42 U.S.C. § 1983 establishes a private right of action regarding the DD Waiver and that the State of New Mexico's eligibility criteria and definition of "related conditions" violate a mandatory provision of the Medicaid Act.

**IV.     New Mexico's waiver application to CMS is not dispositive or relevant to any issue in this case.**

At page 18 of their Response, Plaintiffs try to raise a collateral issue that has nothing to do with the legal interpretation of the Medicaid Act or the language used in New Mexico's regulations. Plaintiffs allege in their Complaint that New Mexico did not submit the full eligibility framework to CMS following the amendment to its rules in 2012. Even if this were true, which Defendants deny, this does not help Plaintiffs. Plaintiffs themselves admit that the CMS application is "not dispositive." *See* Response at 18. Nevertheless, Plaintiffs claim that "the CMS application is relevant to show how New Mexico's DD Waiver program actually functions and how Defendants make eligibility decisions." *See id.* How the DD Waiver program makes decisions is not relevant to any of the issues of statutory and regulatory interpretation that are before the Court. Discovery concerning other aspects of the DD Waiver program will do nothing to inform the Court as to any decision that it is being asked to make in the context of its review (on Defendants' Motion) of whether, as a matter of law, New Mexico has adopted lawful eligibility criteria for its DD Waiver program. Again, Plaintiffs are simply attempting to muddy the waters and sidestep the main issue, which simply requires the Court to interpret the statutes and regulations as written.

**V.     Defendants' actions do not violate Equal Protection.[1]**

Plaintiffs' argument that exclusion of FAS from the DD Waiver violates the equal protection clause of the New Mexico and United States Constitutions is necessarily dependent on Plaintiffs' erroneous attempt to classify O.O.'s ineligibility as an exclusion. As discussed earlier,

---

[1] As discussed in Defendants' Memorandum Brief [Doc. 5], Plaintiffs' claims for equal protection and violations of due process necessarily invoke 42 U.S.C. § 1983. For the reasons discussed previously—namely, that a private right of action under Section 1983 does not exist under the circumstances of this case—this is a further reason why Plaintiffs' equal protection and due process challenges are not viable.

New Mexico has not systematically excluded individuals with intellectual disabilities from its programs. Had New Mexico done so across the board, then perhaps there might have been a basis for the type of challenge that Plaintiffs reference in *Breen v. Carlsbad Municipal Schools*, 2005-NMSC-028, 138 N.M. 331, which involved a challenge on the basis of all mentally disabled individuals as a class. But as Plaintiffs have acknowledged, individuals with FAS may in fact be found eligible (on an individualized basis) for New Mexico's DD Waiver program. Thus, there is no systematic exclusion of such persons from New Mexico's DD Waiver program. Plaintiffs attempt to insert a square peg in a round hole by arguing that FAS individuals are treated differently, but it is not arbitrary and capricious to make decisions concerning intellectual functioning based on IQ and other relevant considerations, as such criteria have a rational basis. The condition of FAS is not entitled to special or elevated scrutiny, because individuals with FAS are not systematically excluded from New Mexico's DD Waiver program. Even if Plaintiffs wished to challenge the federal statutes and regulations governing DD Waivers as unreasonably vague or otherwise constitutionally impermissible, Plaintiffs have not done so here.

Once again, Plaintiffs seek to mischaracterize the decision-making and policy considerations underlying the eligibility criteria adopted by the Federal government and the State of New Mexico. Plaintiffs admit they "do not challenge the essential eligibility criteria contained in 8.290.400.10(B)(2)(b), (c), (d) and (e) NMAC[,]" but rather "challenge the further exclusion of people with FAS diagnoses who can meet the essential eligibility criteria and who are otherwise Medicaid eligible." *See* Response at 31. Following this quote, Plaintiffs offer purported opinions from the medical community and medical "evidence" that was or should have been presented in the rulemaking process concerning the eligibility of certain conditions, *see id.*

at 31, any such opinions is not relevant to the task before the Court at this time, which is simply to interpret the law as written.

**VI.    Defendants did not violate Due Process.[2]**

Plaintiffs' argument that New Mexico's regulatory scheme violates due process also relies on the supposed "FAS exclusion," which is a straw man that does not in fact exist. Plaintiffs argue, hypothetically and in a vacuum, that "[u]nder the previous regulation, O.O. would have been allowed to present evidence that she met the criteria for the D.D. Waiver[,]" citing Plaintiffs' Complaint at ¶¶ 87-89. Even if this were true, and even if (as Plaintiffs claim) disability advocates did not necessarily agree with the changes that the State made in 2012, the rulemaking procedure itself constitutes the procedural due process that allowed this change to occur. Likewise, the fact that O.O. applied, was denied, had an administrative hearing, and has the right to bring this appeal, demonstrates that O.O. has been provided with ample due process. The Court cannot rewrite the law as Plaintiffs would prefer it to be, but can only interpret it as it is written.

**VII.    Plaintiffs' claims under the ADA and the Rehabilitation Act are unavailing.**

Plaintiffs are correct that the Americans With Disabilities Act ("ADA") and the Rehabilitation Act were intended to address the fact that "historically, society has tended to isolate and segregate individuals with disabilities[.]" However, both Section 504 of the Rehabilitation Act and Title II of the ADA prohibit discrimination against individuals with disabilities "solely by reason of his or her disability." As explained throughout this Reply and in the Defendants' original Memorandum Brief, O.O. was not excluded *because of* a disability, nor is she a *"qualified* individual with a disability" who is entitled to protection under the statutes

---

[2] *See* Footnote 1, *supra*.

pertaining to New Mexico's DD Waiver program. Had she qualified, she would be subject to equal treatment within the program—but because she is not eligible for the program, she is not a "qualified individual." Under the case law that Plaintiffs discuss, Plaintiffs' claim of discrimination could only be supportable if the State of New Mexico had simply decided to exclude all intellectually disabled individuals from the DD Waiver program.

This was in fact the principle underlying the decision in *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002), cited by Plaintiffs, where the court reversed a state's decision to exclude the entire population of aged, blind, and disabled people from a health insurance plan (not a waiver case) as a group for no reason. The situation here is not a categorical exclusion of a wide category of traditionally protected individuals such as those with intellectual impairments, or (in the case of *Lovell*) blind individuals, just to save money. Instead, based on O.O.'s individual characteristics, O.O. is simply not qualified for the DD Waiver benefits that she seeks. Therefore, as held in the cases cited by Defendants' Memorandum Brief, Plaintiffs' claim for disability discrimination under the ADA or the Rehabilitation Act cannot lie.

Much of the remainder of Plaintiffs' Response consists of reported statements and policy arguments wherein Plaintiffs argue that the DD Waiver program's list of qualifying impairments was inadequate because individuals such as O.O. will remain at risk for unnecessary institutionalization if they do not qualify for the DD Waiver. Many of Plaintiffs' statements are factually correct, such as the fact that the State receives Federal funds in administering the Medicaid Act, including its DD Waiver program, and that an individual need not be institutionalized to assert eligibility for the waiver under *Olmstead*, 527 U.S. 581 (1999) and *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181-82 (10th Cir. 2003). However, none of

those facts is relevant to the present dispute, because none of those facts establishes that New Mexico is required by law to find O.O. eligible for the DD Waiver based on her FAS diagnosis.

**VIII. Plaintiffs' efforts to invoke Rule 1-076 NMRA are procedurally improper.**

The decision of the Human Rights Division ("HRD") that it did not have jurisdiction to consider Plaintiffs' claim under the ADA is not properly the subject of an appeal under Rule 1-076 NMRA. Rule 1-076 governs appeals from orders of the New Mexico Human Rights Commission, but the language of the rule authorizing an appeal presupposes that there has been a determination and a final order following fact finding and a hearing. Plaintiffs' invocation of Rule 1-076 is not the proper path to seek judicial review of an agency's decision that the agency does not have jurisdiction. Rather, such a challenge to a determination of no jurisdiction should have been mounted under Rule 1-075, which provides for administrative review of agency decisions that would not otherwise be reviewable. It allows for review of both administrative orders and decisions, requires a petition for a writ of certiorari, and contains very specific procedures as to how the issue is presented to the district court. *See e.g., Masterman v. State Taxation & Revenue Dep't*, 1998-NMCA-126, ¶ 11, 125 N.M. 705, 964 P.2d 869 (right to appeal drivers' license revocation where revocation was mandatory under the law was not authorized by statute, so driver's remedy was to file for review under 1-075). Rule 1-075(D) requires that a claimant seek a writ within 30 days of the decision at issue.

Plaintiffs' argument under Rule 1-076 fails because Plaintiffs do not challenge error in the fact finding process, which is subject to "*de novo* review" under Rule 1-076. Rather, HRD's letter decision that HRD was without jurisdiction to review the ADA claim (Exhibit B to Memorandum Brief [Doc. 5-2]) should have been challenged in the time and manner provided by Rule 1-075. Given Plaintiffs' failure to invoke the proper rule within the required timeframe,

Plaintiffs' challenge to HRD's decision that it was without jurisdiction to review Plaintiffs' claim under the ADA must be dismissed.

IX.     **Discovery is not needed to decide the issues of law and statutory interpretation presented here.**

Plaintiffs' further argument that the Motion to Dismiss should be defeated because there are issues of fact that should be the subject of discovery is another red herring. The cost-benefit analysis that Plaintiffs argue needs to be done is not for this Court. Similarly, the fact that there is a Joint Powers Agreement between the New Mexico Human Services Department and the Department of Health is a matter of public record and is not an issue in this case, as Defendants are not challenging their status as Defendants in this lawsuit.

The issue is one of a statutory interpretation and is therefore a proper subject of a Motion to Dismiss. Although Defendants did not oppose allowing Plaintiffs to seek an order authorizing them to file their Response with a length exceeding that ordinarily allowed by the Local Rules for the District of New Mexico, the Court can see that much of what Plaintiffs have offered is repetitive and consists of policy arguments, not legal interpretations. Plaintiffs, who are obviously advocates for individuals with FAS, and who are dissatisfied with the results of the legislative and rule-making process, now ask this Court to validate their view that FAS should be a covered syndrome under the DD Waiver. Even if there may be policy reasons to support such a change, the Medicaid Act in its current form does not dictate that O.O. is entitled to DD Waiver services, and there is no basis in Medicaid regulations or New Mexico statutes and regulations for a finding that O.O. is entitled to DD Waiver services.

As Defendants discussed in their original Memorandum Brief, the federal regulations governing DD Waiver programs were written to provide discretion to the states within the stated parameters. The fact that not every Medicaid-eligible condition is also covered by New

15

Mexico's DD Waiver program is not a violation of law. It is instead an obvious consequence of decisions made at the federal level to provide discretion to individual states to determine the "related conditions" to which the DD Waiver would apply, even while recognizing that this approach may deny DD Waiver services to some individuals who remain qualified for Medicaid services generally, under other programs. A further obvious consequence of those federal-level decisions is that individual states' eligibility criteria will not be identical and necessarily result in some differing determinations on a state-by-state basis.

For the reasons set forth above and in their Motion and Memorandum, Defendants request that the Motion to Dismiss be granted in its entirety.

Respectfully submitted,

MILLER STRATVERT P.A.

By  */s/ Jennifer D. Hall*
JENNIFER D. HALL
STEPHEN B. WALLER
HOLLY AGAJANIAN
**Attorney for Defendants**
P.O. Box 25687
Albuquerque, NM 87125
(505) 842-1950
(505) 243-4408 Fax
jhall@mstlaw.com
swaller@mstlaw.com
hagajanian@mstlaw.com

I hereby certify that on the 22nd day of July, 2016 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Attorneys for Plaintiffs:**
Matthew D. Bernstein
Tara Ford
Pegasus Legal Services for Children
3201 Fourth Street NW
Albuquerque, NM 87107
(505) 244-1101
(505) 244-0060 Fax
mbernstein@pegasuslaw.org
tford@pegasuslaw.org

**Attorneys for Plaintiffs:**
Katherine Wray
J. Kate Girard
Wray & Girard, P.C.
102 Granite Avenue NW
Albuquerque, NM 87102
(505) 842-8492
(505) 243-2750 Fax
kwray@wraygirard.com
jkgirard@wraygirard.com

           */s/ Jennifer D. Hall*
           Jennifer D. Hall

\\Abq-tamarack\ProData\006352-048632\Pleadings\3007832_2.docx