IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SANDRA FORTIER and PAUL OLSON,
*on behalf of* O.O., a minor child,

    Plaintiffs,

v.                                                                 Civ. No. 16-482 SCY/WPL

NEW MEXICO HUMAN SERVICES
DEPARTMENT; NEW MEXICO
DEPARTMENT OF HEALTH; BRENT
EARNEST, Secretary, New Mexico Human
Services Department, *in his official capacity*;
LYNN GALLAGHER, Acting Cabinet
Secretary, New Mexico Department of
Health, *in her official capacity*; CATHY
STEVENSON, Director, Developmental
Disabilities Supports Division of the New
Mexico Department of Health, *in her official
capacity*; NANCY SMITH-LESLIE, Director,
Medical Assistance Division of the New
Mexico Human Services Department, *in her
official capacity*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

In their motion for partial reconsideration (Doc. 26), Plaintiffs Sandra Fortier and Paul Olson ask the Court to reconsider the portion of its ruling in which the Court dismissed Plaintiffs' claims predicated on 42 U.S.C. § 1396n(c)(2)(C), one of the freedom of choice provisions of the Medicaid Act, 42 U.S.C. § 1396 *et seq*. *See* Doc. 22 (Memorandum Opinion and Order on Motion to Dismiss). For the reasons stated below, the Court will **deny** the motion.

**I. Standard of Review**

Plaintiffs moved for reconsideration of the Court's April 10, 2017 Memorandum Opinion and Order pursuant to Fed. R. Civ. P. 59(e) or the Court's inherent discretionary power. Doc. 26

1

at 7-8. As Defendants point out, strictly speaking, Rule 59(e) is not directly applicable here because the decision Plaintiffs ask the Court to reconsider was not a final order or judgment. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a *judgment* must be filed no later than 28 days after the entry of the judgment.") (emphasis added); *see also Guttman v. New Mexico*, 325 F. App'x 687, 690 (10th Cir. 2009) ("Rule 59(e) does not apply because the court's order was not a final judgment . . .") (unpublished). Instead, Plaintiffs' motion to reconsider is a motion to revise an interim order under Fed. R. Civ. P. 54(b). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). A district court possesses broad discretion to review interlocutory matters under this standard. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).

Nonetheless, the Tenth Circuit has indicated that a district court faced with a Rule 54(b) motion to reconsider may use the standards for reviewing a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) to guide its analysis. *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (unpublished). Under the Rule 59(e) standards, a court may grant a motion for reconsideration in three circumstances: when there is "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). A motion to reconsider is not an opportunity "to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). In other words, a motion to reconsider should do more than simply restate the position that was

unsuccessfully advanced by the party in the initial motion, and should not present new arguments that could have been raised in the initial motion.

Because the Court set forth the facts underlying Plaintiffs' claims in its prior decision (Doc. 22), the Court will not repeat those facts in this Order.

**II. Analysis**

Plaintiffs argue that Defendants, in getting their DD Waiver application approved, committed a "bait and switch." Specifically, they assert that Defendants represented to the Department of Health and Human Services ("HHS") that they would provide Home and Community-Based Services (HCBS) to individuals with conditions related to intellectual disability ("ID"). Doc. 26 (hereinafter "Mot.") at 5. According to Plaintiffs, after HHS approved Defendants' application, Defendants then impermissibly devised a definition of "related condition" that differs from the federal definition – the state definition looks to an individual's diagnosis whereas the federal definition looks to an individual's functional capacity. *Id*. at 9-12. Plaintiffs argue that, in considering Defendants' application, HHS would have relied on the federal definition rather than the not-yet-devised state definition and, therefore, the program HHS approved is different than the one in effect. *Id*.

Plaintiffs do not argue, however, that the Court should strike down the state's DD Waiver program as invalid. To the contrary, they candidly acknowledge that states have wide latitude in defining the parameters of their waiver programs.[1] Mot. at 9; *see also* Doc. 22 at 12 ("the State has great discretion in developing its waiver programs, including setting eligibility requirements and limitations for waiver services." (quoting *Lewis v. N.M. Dep't of Health*, 275 F.Supp.2d 1319, 1345 (D.N.M. 2003)). Instead, they argue that the Court should require Defendants to use

---

[1] Notably, this case does not concern whether HHS would have approved the program as it currently exists – given the wide latitude States have in developing their own programs, HHS likely would have.

3

the federal definition of "related conditions" and allow O.O. to demonstrate that she is eligible for DD Waiver services because her functional capacity is similar to an individual with ID. *See* Mot. at 7, 10, 14. One avenue through which Plaintiffs seek this result is 42 U.S.C. § 1396n(c)(2)(C), one of the Medicaid Act's "freedom of choice" provisions.

> The freedom of choice provision in § 1396n(c)(2)(C) provides that:
>
> A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that . . . such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded.

As the Court explained in its previous Order, this provision requires the state to provide information as to feasible home and community-based alternatives "if available under the waiver." *See* Doc. 22 at 10. Corresponding federal regulations clarify that the state must provide not only this information, but also the opportunity to choose between the available services. *Id.* For purposes of its discussion here, the Court will assume – as Plaintiffs argue – that § 1396n(c)(2)(C) provides a privately enforceable right to choose among available HCBS waiver services. While Plaintiffs may have a legitimate gripe with Defendants' definition of related conditions and its divergence from the federal definition, § 1396n(c)(2)(C) does not provide a mechanism to order the state to substitute the federal definition for the current state definition. In arguing otherwise, Plaintiffs principally rely on two cases. These cases, however, are distinguishable and ultimately fail to support Plaintiffs' position.

The first case is *Guggenberger v. Minnesota*, 198 F.Supp.3d 973 (D. Minn. 2016). *Guggenberger* allowed a § 1983 claim to go forward under § 1396n(c)(2)(C) when the plaintiffs were deemed eligible for waiver services but had been placed on a wait list. *See* 198 F.Supp.3d at

4

1018. Despite the existence of permissible caps on services and the need to reserve some waiver funds in case of emergency, the plaintiffs had plausibly alleged a claim under § 1396n(c)(2)(C) by stating that waiver services were available because more funds had gone unused than were reasonably necessary for reserves. *See id.* at 1015-16.

The question of whether a state violates § 1396n(c)(2)(C) by not applying approved funds to services for eligible individuals is much different than the question of whether this provision compels states to provide services to individuals who are not eligible for them under state regulations. Rather than dealing with the issue of eligibility for services, *Guggenberger* determined that the plaintiffs in that case were "not being offered the choice to receive such services due to Defendants' mismanagement of the State's Waiver Services Program." *Id*. at 1018. In holding that "eligible individuals . . . [m]ust be given the choice of either institutional or home and community-based services," the court presumed that the plaintiffs seeking services were eligible for those services. *Id*. at 1017. In contrast, as Plaintiffs acknowledge, application of the definition of "related condition" found in current state regulations disqualifies O.O. from eligibility for the DD Waiver. *See* Mot. at 7. Further, Plaintiff cites to no case in which § 1396n(c)(2)(C) was used to compel a state to alter its definition of who is eligible for the state's HCBS waiver program.[2]

The second case Plaintiffs rely on, *Doe v. South Carolina Department of Health and Human Services*, 727 S.E.2d 605, 611 (S.C. 2011), is also inapposite. *Doe* involved an administrative appeal in which the South Carolina Supreme Court reversed the agency decision denying waiver services after concluding that the agency had impermissibly limited eligibility. However, the eligibility limitations in *Doe* were imposed according to an informal agency policy

---

[2] One avenue to challenge the state's definition of "related conditions" would be to oppose it prior to its adoption. As the Court noted in its previous Order, that the State complied with the public comment period and other required procedures before enacting 8.290.400.10B NMAC is not in dispute. *See* Doc. 22 at 19.

that was not only omitted from the state's HCBS waiver application, but that was also in direct conflict with the state's promulgated regulations. *Id.* at 610-11. The South Carolina Supreme Court rejected the plaintiff's argument that the federal definition was automatically binding on the state. Although it determined that the HCBS waiver application defined eligibility criteria, it also noted that the state might interpret those general criteria by regulation. *Id.* Because the state's regulations echoed the federal definition, the *Doe* Court held that narrowing the criteria by informal policy was error and ordered the agency to reconsider its decision. *Id.* at 611. Thus, *Doe* did not deal with a conflict between a federal definition and a definition found in a formally enacted state regulation. Unlike *Doe*, no evidence exists in the present case that the state regulation at issue (here, 8.290.400.10B NMAC) conflicts with a definition from a higher state authority. Thus, even if the Court adopted the rationale applied in *Doe,* this rationale would not require the Court to replace a definition found in a formally enacted state regulation with a broader definition found in a federal regulation.

In sum, the Court concludes that § 1396n(c)(2)(C) does not provide an avenue for Plaintiffs to bring a § 1983 action under which the Court may replace a state's definition of "related condition" with a federal definition and thereby expand the scope of eligibility for the state's waiver program. Plaintiffs might challenge the regulatory definition as part of their administrative appeal, which the Court did not dismiss, but they have not stated a claim under the Medicaid Act.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Reconsideration (Doc. 26) of this Court's April 10, 2017 Memorandum Opinion and Order is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**